**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT JOHN ABEL, on behalf of himself and all others similarly situated,<br><br>                              Plaintiff,<br><br>                    v.<br><br>PORSCHE CARS NORTH AMERICA, INC. and DR. ING h.c. F. PORSCHE AG,<br><br>                              Defendants. | Civil Action No.: 3:23-cv-03807-RK-TJB<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff Robert John Abel alleges for his amended class action complaint the following through his attorneys Squitieri & Fearon, LLP, on behalf of himself and all others similarly situated based on personal knowledge as to his own vehicle and upon information and belief as to all other matters.

**PRELIMINARY STATEMENT**

1.     This is a class action brought by the Plaintiff, Robert John Abel ("Plaintiff"), on behalf of himself and all other similarly situated purchasers  and lessees of Porsche vehicles from model years 2014 through 2019 which, with the sunsetting of 3G services by wireless carrier partners, will no longer be able to operate the functions of the "Porsche Connect" systems installed in the "Cars," as detailed herein.

2.     Defendant Porsche Cars North American, Inc. ("Porsche N.A.") is the United States based subsidiary of Defendant Dr. Ing. h.c. F. Porsche AG ("Porsche AG") (collectively "Porsche"). Porsche has admitted and identified the models and years of the cars with now inoperable "Porsche Connect" features. Defendants made numerous representations and provided warranties in their marketing of the Cars regarding the Porsche Connect systems, when in fact,

the Cars' Porsche Connect features were only temporary due to the defective manufacture and defective design of Porsche's factory equipped 3G telematics systems which was built to be operative <u>only</u> on a 3G network installed in the Cars. The Cars' internet enabled features such as roadside emergency safety features were rendered inoperable after the 3G phase out in 2022 due to Defendants' use of obsolete telematics equipment they installed in the cars.

3.  The cars affected are: "911" for model years 2017-2019; "Cayenne" for 2015-2019; "Macan" for 2017-2018; "718" for 2017-2021; "Panamera" for 2014-2018 and the "918 Spyder" for 2014 (collectively the "Cars").

4.  Defendants' representations about Porsche Connect were false and misleading.  In the months and years following the introduction of Porsche Connect in the early 2010s, as the phasing out of 3G service was being planned and 4G and 5G service was being phased in, Defendants never disclosed after model year 2021 was issued that the "telematics" in the Cars had been built and installed with 3G only capabilities and that Porsche Connect would not be operable on any generation beyond 3G (hereinafter referred to as "3G Only Limitations").

5.  By making ubiquitous misrepresentations about Porsche Connect and the Cars, and by failing to honor their "bumper-to-bumper" warranties, Defendants (i) engaged in deceptive  acts in violation  of Florida and Georgia consumer fraud statutes; (ii) breached express and implied warranties under UCC uniform code provisions adopted by all states other than Louisiana; and (iii)  committed other wrongdoing.  Defendants are liable to Plaintiff and all other similarly  situated members  of the Class defined below for all damages  resulting  from the claims herein.

6.     This action was commenced to obtain recompense for diminution in value and/or overcharges for Cars whose telematics were rendered inoperable when 3G as phased out, and/or to recover the costs to repair, retrofit or replace the 3G telematics or if necessary the Cars.

**PARTIES**

7.     Plaintiff Robert John Abel ("Abel") is a resident of the state of Florida who purchased a 2018 Porsche Panamera in or about July, 2018 from Porsche of Orlando ("Vehicle") as a "new vehicle." Marketing materials promoting the Vehicle promised Porsche Connect features. Abel paid approximately $130,000 for his new Porsche in 2018. Under his claims herein, an appropriate remedy is to replace his vehicle with a new vehicle. A new Panamera price range is from $93,000 to $148,000.

8.     Porsche Cars North America, Inc. ("Porsche N.A.") is a Delaware corporation with its principal place of business located at 1 Porsche Drive, Atlanta, Georgia 30354. Porsche N.A. is a wholly-owned U.S. subsidiary of Defendant Porsche AG.

9.     Porsche N.A. (i) is the exclusive distributor of Porsche automobiles in the United States; (ii) imports into and marketed Porsche automobiles in the United States, and sold Porsche automobiles to authorized Porsche dealers, who in turn sold and leased Porsche automobiles to purchasers and lessees;  (iii) provided marketing,  sales, parts, service, technology, and training support to Porsche automotive retailers in the United States; and (iv) performing these functions, Porsche has created and disseminated the misrepresentations described in this complaint.

10.    Defendant Dr. Ing. h.c. F. Porsche AG ("Porsche AG") is a German corporation with its principal place of business located in Stuttgart, Germany. Porsche AG designs, develops, manufacturers, and sells luxury automobiles. Porsche AG engineered, designed, developed, manufactured, and installed the TCU on the Cars and exported these vehicles with the

knowledge and understanding that they would be sold throughout the United States. On information and belief, Porsche AG also reviewed and approved the marketing and advertising campaigns designed to sell the Porsche-branded Cars and drafted the warranties.

11.     Porsche AG controls and oversees all aspects of Porsche's operations including marketing. Porsche AG is responsible for all manufacturing "specs" of the Cars including the use and/or installation of 3G Only telematics which are the subject of this litigation. Porsche AG has designed and manufactured the Cars defectively with Porsche Connect telematics which were 3G only and failing to properly label the Porsche Connect. Porsche Connect with 3G only telematics were inoperable with the phasing out of 3G.

12.     Porsche developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Cars.

## JURISDICTION

13.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332( d) the Class Action Fairness Act ("CAFA") because (1) this action is a "class action," which contains class allegations and expressly seeks certification of a proposed class of individuals; (2) the putative Class consists of more than one hundred proposed class members; (3) the citizenship of at least one class member is different from Defendants' citizenship (Delaware, Georgia and Germany); and (4) the aggregate amount in controversy by the claims of Plaintiff and the putative Class exceeds $5,000,000, exclusive of interest and costs. Jurisdiction is also appropriate under 28 U.S.C. 1367(a) and 28 U.S.C. 1332(a)(1) and (a)(2) because Plaintiff is a citizen of Florida, Defendants are citizens of Georgia, Delaware or Germany and the amount of controversy (the Vehicle) exceeds $75,000.

14.     This Court also has personal jurisdiction over Defendants  because Defendants conduct substantial operations and earn substantial revenues from activities in New Jersey.

15.     Venue is proper in this jurisdiction  pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District due to the activities of Defendants in this District.

## CLASS ACTION ALLEGATIONS

16.     Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

17.     Plaintiff brings this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Class consisting of:

> All persons who purchased or leased a Car, anywhere in the United States, with "Porsche Connect" with 3G Only Limitations (the "Class").

18.     Plaintiff reserves the right to amend the definition of the Class and/or to seek certification of sub-class for individual state buyers under the buyer's home state law.

19.     This action is properly maintainable as a class action.

20.     There could be over 300,000 members of the Class based upon Porsche's own public figures of "Affected Models" and "Affected Model Years" sold by Porsche with telematics. Accordingly, joinder of all members is impractical.

21.     Common questions of law and fact exist as to all members of the Class and predominate over any questions  solely affecting individual members of the Class. Among questions of law and fact in common to the Class are:

a.      Whether Defendants breached seller's and/or manufacturer's warranties under the UCC;

b.      Whether Defendants misrepresented the 3G Only Limitations features of Cars;

c.      Whether Defendants manufactured, marketed and/or sold the Cars fraudulently after knowing the date of carriers' phase out of 3G;

d.      Whether Defendants in its marketing and sale of the Cars violated the consumer protection laws of Florida and/or Georgia, *et seq.* and similar laws of other states in which the vehicles were sold;

e.      Whether Defendants were unjustly enriched; and

f.      The extent of damages/diminution in value/overcharges resulting from the 3G Only Limited Telematics in the Cars.

22.      Plaintiff's claims are typical of the claims of each member of each of the Class in that Plaintiff alleges a common course of conduct by Defendants toward each member of the Class. Specifically, Defendants violated the consumer protection laws of Georgia, Florida and/or Delaware, and/or breached its warranties with each member of the Class and/or made materially false statements and omissions. Plaintiff and the other members of the Class seek identical remedies under identical legal theories. There is no antagonism or material factual variation between Plaintiff' claims and those of the Class.

23.      Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel who have extensive experience prosecuting class actions and who, with Plaintiff, is fully capable of, and intent upon, vigorously pursuing this action. Plaintiff has no interest adverse to the Classes.

24.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Furthermore, the damage that has been suffered by any

6

individual Class member is likely not enough to sustain the expense and burden of individual litigation. Hence it would be impracticable for all members of the Class to redress the wrongs done to them individually. There will be no difficulty in the management of this action as a class action.

25.     The prosecution of separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to the individual Class members, which could establish incompatible standards of conduct for Defendants. In addition, adjudications with respect to individual members of the Classes could, as a practical matter, be dispositive of the interests of the other members of the Classes not parties to such adjudications, or could substantially impede or impair their ability to protect their interests.

26.     The members of the Class are readily identifiable through Defendants' records.

27.     Defendants have acted on grounds generally applicable to the Classes with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Classes as a whole.

## SUBSTANTIVE ALLEGATIONS

28.     Porsche cars have been sold in the USA since the 50s.

29.     The Cars are equipped with "Telematics Control Units" ("telematics") connected to the engine control module which are the instruments which connect the Porsche to internet service. *See* http://www.tomorrowtechnician.com/Porsche-telematics. December 15, 2020 by Andrew Madiel. Last accessed August 28, 2022. The Porsche Connect features depend on the equipment and technology of the telematics systems installed at time of manufacture in the Cars, not contracts with service providers.

30.     Wikipedia defines a telematic control unit as "the embedded system on board the vehicle . . ." which consists of "a satellite navigation (GNSS) unit . . . an external interface for mobile communication . . . an electronic processing unit . . . a microcontroller, microprocessor or field programmable gate array . . . a mobile communication unit . . . [and] memory." *See* Wikipedia "Telematic Control Unit" https://en.wikipedia.org/wiki/Telematic_control-unit

31.     The Porsche telematics system became known as "Porsche Connect."

32.     As the public became increasingly aware of the capabilities and benefit of telematics, car buyers began to demand the connectivity feature from car makers. The benefits are tangible and can be valued and include, *inter alia*, reduced insurance premiums and vehicle diagnosing capabilities which reduce service costs, and fuel expenses. *See* https://www.incartelematics.com/faq-items/what-cars-have-telematics (March 2021) last accessed August 27, 2022.

33.     When 3G became available Porsche installed 3G capable telematics in the Cars but the telematics modules after the 2G version (which Porsche made so they could be retrofitted) were 3G only and could not be retrofitted. In the field of cellular mobile connections, a "generation" such as "3G" generally refers to a change in the fundamental nature of the service, non-backwards compatible transmission technology, higher peak bit rates, and new frequency bands. Cellular connectivity has characteristic of technology, speed, frequency and spectral capabilities which are constantly being improved upon.

34.     All manufacturers of 3G devices have long known that 3G was "spectrally inefficient" and would be phased out as early as possible.

35.     In January 2008, the FCC auction for 700 MHZ spectrum began with Verizon Wireless and AT&T winning the biggest share after having stated their intentions to support LTE a/k/a 4G LTE, the next generation after 3G.

36.     As early as August 2009, carriers supporting 3G began planning their upgrade to 4G LTE. On December 14, 2009 Telia Sonera became the first carrier to offer customers 4G services. *See* "First in the World with 4G Services," Telia Sonera Press Release December 14, 2009. Accordingly, Defendants knew of the imminent obsolescence of 3G and that industry standards were rapidly advancing.

37.     In 2014, Defendants marketed their 2014 model year cars with Porsche Connect. The Porsche Connect feature of the 3G only telematics was promoted throughout 2021. In marketing the Porsche Connect, Defendants made substantial  efforts  to highlight and promote the features of Porsche Connect to distinguish the Cars from its competitors' automobiles  by marketing  it as more technologically advanced than the competition.

38.     Porsche's promotional materials promised:

**Porsche Connect App Overview**

*What is Porsche Connect?*

Designed as a proprietary connectivity and communication system, Porsche Connect helps you stay up-to-date on current news events, manage incoming text messages and phone calls, navigate your way through dense traffic, and stay linked to your Porsche vehicle. From locking the doors to accessing vehicle information, Porsche Connect transforms your smartphone into the perfect remote control for your Porsche.

Porsche Connect can be found across the entire Porsche lineup. Porsche Connect Plus is included as standard on 911, Panamera, and Cayenne models. Porsche Connect and Porsche Connect Plus are options on 718 Boxster, 718 Cayman, and Macan models.

Unlock the full potential of your Porsche with Porsche Connect. Our intelligent services provide you with more ways to experience

your Porsche than ever before. Enjoy an excellent analog driving experience that has been perfectly integrated into the digital world.

The digital services offered vary by vehicle model, model year and specific country availability. To find out more, compare the service availability of the individual models in the Porsche Connect Store or log in with your Porsche ID to learn about the Porsche Connect services available for your vehicle.

•••

The following provides you with comprehensive information on Porsche Connect and our digital services. Discover the latest models and their feature highlights.

**This is Porsche Connect**

**General**

With Porsche Connect, your digital co-driver is always on board. The wide range of services helps you to have the most comfortable and modern driving experience possible: before, during and after your trip.

Real-time information and seamless communication bring the digital and real worlds together.

**Functions on Demand – Your Special Features in a Single Tap**

For the first time, customers are able to purchase and use individual functions after the purchase of the car. In the Taycan, Functions on Demand can be enabled over the air. This means there is no need for time-consuming trips to the workshop. Instead, new features are just a tap away. So, get ready for the future – in your Porsche.

The same basic representations were made for every "Affected Model Year."

39.    Porsche incorrectly describes the Porsche telematics by failing to disclose that they were 3G-only telematics.

40.    The Cars were factory equipped with 3G only telematics devices but by 2014 3G was 3G already being replaced by 4G LTE.

10

41.     Consumer Reports succinctly described the situation:

"As wireless carriers shut down their 3G networks over the coming months, millions of cars are losing the ability to automatically contact first responders after a crash…
Automatic crash notification, which alerts first responders via a built-in cellular connection, often relies on aging 3G cellular networks to connect drivers with emergency services and share a vehicle's location. Even though automakers have been aware that these networks are shutting down permanently between February and July, many manufacturers still relied on it until as recently as the 2021 model year."
"Shutting down the 3G network to prioritize newer technologies is positive in the long run," says Alex Knizek, an automotive engineer at CR. "But it is disappointing that some automakers have failed to offer a solution to owners of 3G-connected vehicles, leaving them unable to take advantage of proven and valuable safety features, as well as other beneficial connectivity functions."

The reason is cost savings, according to Roger Lanctot, director of automotive connected mobility at Strategy Analytics, a consulting firm. "It's the last chapter of the automakers adopting the least-expensive connectivity module they can find," he says. Only recently did automakers start future-proofing newer models. "It's a challenge for the industry, but going forward, automakers recognize that they need to put the latest connectivity in."

In addition to crash notification, many vehicles also have an SOS button to contact emergency services, and a lot of those buttons still use a 3G network. It's usually red and located near the vehicle's dome light or rearview mirror. Some cars may also use 3G connectivity for convenience features such as remote unlocking, remote start, emergency roadside assistance, navigation map updates, and vehicle diagnostics. These and other features will no longer work without an upgrade to newer 4G or 5G technology.

"What a mess," says William Wallace, CR's manager of safety policy. "Wireless carriers, federal regulators, and some automakers seem content to leave people out to dry, even if it means they lose access to a potentially lifesaving technology. Every automaker should deliver to its customers the services they've been promised—without charging them extra—and lawmakers should get ahead of the game to keep this from ever happening again in the future."

42.     There was no disclosure or even suggestion that the 3G only Porsche Connect would be inoperable once 3G was phased out or that the Porsche Connect feature was only temporary or had only a limited life. As the later Porsche model years after 4G became prevalent, Defendants never disclosed that its telematics equipment in the Cars was 3G only or that the Car telematics "life span" was far far less than the average 10 year life span of a Porsche. To the contrary, Defendants marketed Porsche Connect as a permanent feature of the Car adaptable to new technology.

43.     Porsche never informed class members of <u>any</u> of the 3G Only Limitations.

44.     From 2014-2019, Defendants sold 47,007, 51,756, 54,280, 55,420, 57, 202 and 61,568 cars in the USA, respectively for 2014-2019 consisting of the 911, 718, Panamera, Cayenne, Macan and Taycan models.

**PORSCHE KNEW OF IMMINENT NEW GENERATIONS
OF WIRELESS TECHNOLOGY THAT
<u>WOULD MAKE THEIR 3G ONLY TELEMATICES INOPERABLE</u>**

45.     Volkswagen AG owns a substantial stake in Defendant Porsche AG. VW AG formed an "Integrated Automotive Group" in 2009 to share manufacturing operations as part of 5G AA Automatic Association ("5G AA") a "registered voluntary association" founded in September 2016 by Audi AG (owned by Volkswagen AG), Daimler AG and five major 5G patent holders. "5G AA was created to connect the telecom industry to vehicle manufacturers to develop end-to-end solutions for future mobility and transportation services." Christopher Voight Chairman of the 5G AA Board.  *See* https://5gaa.org last accessed August 27, 2022.

46.     5G AA promoted CV2X which, as designed, early on provided a migration path from earlier 3G generation to the anticipated 5G based systems and services. *See* https://enom.wikipedia.org/wiki/Vehicle-to-everything last accessed August 27, 2022.

47.     As a result of Volkswagen AG's membership in of 5G AA and Porsche AG's association with Volkswagen, Porsche was very aware of 3G's almost automatic obsolescence in Porsche cars as soon as it was introduced.

48.     Defendants could have, but chose not to, design, manufacture, build or install telematics to be capable with the to be capable with the latest generation of cellular connectivity which could allow the devices to continue to connect to wireless "generations" following 3G.

49.     Defendants had the capability to retrofit its telematics and did so to its 2G telematics once 3G became the prevalent technology, but the Cars 3G only telematics cannot be retrofitted.

50.     Even after designing manufacturing and installing the 3G Only Telematics in the Cars, a technology "fix" for the 3G phase out was not impossible, or even difficult. It would have been costly however, but Defendants could have done it, or planned in advance by recalling cars and installing upgrades to add 4G and/or 5G capabilities.

51.     Defendants also could have integrated a swappable SIM card into its telematics module which could have allowed the system to upgrade itself to 4G LTD or 5G, but Porsche did not do that.

52.     The 3G phase out does not necessarily automatically disable all devices working on that protocol as it has in the Cars. For example, the iPhone 3GS can connect to Wi-Fi to access internet applications even after the 3G phase out. *See* https://www.zdnet.com/google-amp/home-and-office/_____/3g-is-shutting-down-here-are-the-gadgets-that-still-rely-on-it-do-you-have-one/ ZDNET, June Wan, April 8, 2022. Last accessed August 27, 2022. Software upgrades have been developed to extend the connectivity life of 3G driven devices. *Id.* Google's Pixel 2 was released in October 2017 with hardware/software that could support 4G LTE and

had been pre-armed as early as March 2017. In addition, AT&T connected iPhone 6 and Galaxy S4 Mini and later Samsung Galaxy modes and Pixel 2 Goggle models will all continue to work after the 3G phase out as will older phones from Motorola and LG. While Porsche continued to install, promote and sell the 3G only devices, through the end of the Class Period, the major cellular providers have been preparing for years and hence most mobile/smartphone customers are on the 4G and/or 5G network. *See* https://www.verify-this.com/article/mews/verify/technology-verify/you-will-have-to upgrade-replace-phone-to4g-5g-in 2022-if-you-have-3gVerizon-att-T-Mobile-all-phasing-out-3g/635-e733678c-clcd-485d-9793-7f97c003bcb9  last accessed August 28, 2022.

53.     Accordingly, the 3G obsolescence issue was entirely foreseeable. Jeremy Barnes, a spokesperson for Mitsubishi, was quoted in Consumer Reports about the 3G phase out:

>       "We foresaw this time coming and designed around it"

54.     Defendants did not design, manufacture or install the telematics to be able to transition to successors to 3G due to a desire to save on manufacturing costs. *Id*. quoting Ruger Lanfot, Director of Automotive Connected Mobility at Strategy Analytics. *See also*, Dow Jones EE/Times "3G's Final Sunset Has Begun" https://www.eetimes.com/3gs-final-sunset-has begun/

55.     By contrast, General Motors, whose 2015 and later models of Chevrolet, Buick, GMC and Cadillac all had the "OnStar hardware" affected adversely by the 3G sunsetting, announced to its customers:

>       In 2021, OnStar began working with AT&T on network updates
>       and started executing over-the-air software updates to ensure
>       Members were not impacted by the network transition.

GM committed to automatically send "over-the-air" software updates free of charge to address the 3G phase-out.

## SUNSETTING OF 3G AND LOSS OF
## PORSCHE CONNECT FEATURES IN THE CARS

56.     Published reports indicate that as early as mid-2018, some carriers warned that the shutdown of the underlined entire 3G cellular network was imminent. *See* Peter Giacolone, "Looking Back at When 3G Sunset Efforts All Started" April 15, 2022; https://www.securitysales.com/fire-intrusion/looking-back-3g-sunset/

57.     In July 2018, Verizon warned that it would shut its 3G network by December 30, 2019. That date was postponed briefly, then again. In February 2019, AT&T announced a plan to "sunset" its 3G network. *See* http://www.business.ATT.com/explore/make-the-switch.html last accessed August 27, 2022. 3G "sunsetting" means that a mobile network operator (or carriers) shuts off the cellular infrastructure required to operate devices based on 3G technology.

58.     Notwithstanding that announcement, Porsche sold tens of thousands of 2019 model year 718s, 911s and Cayennes, and tens of thousands more model year 2020 and 2021 718s with 3G Only Telematics.

59.     According to recent Porsche announcements:

> As a result of the sunset of 3G service by wireless carrier partners by February 2022, Porsche vehicles factory-equipped with 3G telematics devices or retrofitted 2G vehicles will no longer be able to receive any ConnectedDrive/Porsche Assist services. Some vehicles factory-equipped with 4G telematics devices will no longer have access to services that require a voice connection, such as PORSCHE Assist eCall and Concierge Services, but will continue to receive certain ConnectedDrive/Porsche Assist services such as Advanced Real-Time Traffic Information, Remote Services and Porsche Online depending on you Porsche model.

60.     The services affected by the phase out of 3G in the Cars are all Porsche Car Connect services and Porshe offered Remote, Safety and Security Services. Remote services include, *inter alia*, "remote vehicle status," and "car finder." "Safety" services include "airbag

deployment notification" and "breakdown call with telematics data transaction." "Security"

services include "advanced theft detection (sabotage, unauthorized movement, etc.).

### AFFECTED PORSCHE MODELS AND YEARS MAKING UP THE CLASS

61.     Porsche announced the following "Affected Models" and "Affected Model

Years" in its website:

| Affected Models | Affected Model Years |
| --- | --- |
| 911 | 2017 – 2019 |
| Cayenne | 2015 – 2019 |
| Macan | 2017 – 2018 |
| 718 | 2017 – 2021 |
| Panamera | 2014 – 2018 |
| 918 Spyder | 2014 |

### DEFENDANTS' CONCEALMENT AND
### OMISSIONS CAUSED LOSS AND DAMAGE TO CLASS MEMBERS CAR BUYERS

62.     Had the Defendants truthfully disclosed and reported that its Porsche Connect

telematics for the Cars were 3G only, consumers would have been less likely to purchase the

cars, would have abstained outright or sought substantial discounts and/or upgrades.  As a

proximate cause of Defendants' misrepresentations detailed in this complaint,  Plaintiff and class

members  purchased  Class Vehicles  in reliance  on Defendants'  misrepresentations  and

omissions in  the  mistaken belief that their Porsche Connect feature was permanent, not obsolete

when sold, and/or the Porsche Connect telematics could adapt to changing technology.

63.     Plaintiff and the class members who purchased Cars did not get the benefit of the

bargain  they  struck.  Instead, they received Cars whose Porsche Connect telematics had planned

obsolescence and were therefore of lesser value because the Porsche Connect was destined for

obsolescence as soon as it was issued. The Cars that Plaintiff and the class members paid for and bargained to receive, while marketed as products with Porsche Connect telematics were of lesser value than as advertised. Accordingly, purchasers of the Cars, including Plaintiff and class members, have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Cars.

64.     The Defendants' misrepresentations, omission and other deceptive conduct in failing to truthfully disclose to prospective buyers that the Cars were 3G Only caused Plaintiff and class members substantial injury in the form of price premiums and overpayments for products and diminished resale value and loss of telematics benefits described herein that are severely limited.

## TOLLING

65.     **Tolling of the Limitations Period** Defendants had actual knowledge for several years that the marketing and advertising of its Cars was deceptive and misleading.

66.     **Continuing Act Tolling** Beginning in or around 2014, Defendants continuously marketed and sold the Cars to unsuspecting car buyers. Defendants continuously represented these vehicles could adapt to technology. By continuously repeating these false representations and failing to disclose that the Cars were 3G only Defendants engaged in a continuing wrong sufficient to render inapplicable any statute of limitations or warranty limitation that Porsche might seek to apply.

67.     At all relevant times, Defendants knew that they were concealing and misrepresenting material facts, but continued to misrepresent and conceal information in its marketing and sales materials. Plaintiff and class members' claims are not time barred.

68.     **Fraudulent Concealment Tolling** State consumer protection laws, together with the doctrine of equitable tolling and/or the discovery rule, toll the applicable statutes of limitations for all class members because of Defendants' conduct, including but not limited to concealment and omission of material facts.

69.     This duty to disclose arose, among other things, due to the Defendants' control over manufacturing, marketing and representations about the Cars and Porsche Connect.

70.     Defendants knew about the 3G Only Limitations of the Cars ever since they manufactured the 2014 model years.

71.     Despite their knowledge, Defendants actively concealed this material information from the Plaintiff and other class members.

72.     Defendants actively concealed the information to continue to profit from their sale and prevent Plaintiff and other class members from bringing suit or otherwise seeking redress.

73.     Plaintiff and class members justifiably relied on Defendants to disclose the true nature of the Cars they purchased, because the truth was not discoverable by Plaintiff and the other class members through reasonable efforts. Any applicable warranty limitation statute of limitations has been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

74.     Defendants are estopped from asserting that statutes of limitations were running for the duration of time Class Members were unaware of Defendants' misrepresentations.

75.     Additional information supporting allegations of misrepresentations is in the control of the Defendants.

76.     Material information concealed and/or actively suppressed by Defendants includes but is not limited to the 3G Only Limitations, described in the preceding paragraphs.

77.    Defendants had a duty to disclose to Class members the 3G Only Limitations.

78.    Defendants breached express and implied warranties and actively and affirmatively misrepresented, concealed and suppressed, both pre-sale and post-sale, the existence of the 3G Only Limitation.

**WARRANTIES**

79.    The warranties accompanying Cars were procedurally and substantively unconscionable under Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties and the purchasers' lack of knowledge that Cars had 3G only limitations.

80.    Porsche advertises "The Porsche Warranty" and "The Porsche New Car Warranty" and an extended "Porsche Approved Warranty." Porsche also extends a "Porsche Parts Warranty" to every "Porsche Genuine Part fitted to your Porsche by a Porsche Center." Based on Porsche's own warranty literature the warranty appears to be offered by Porsche AG.

81.    The Porsche Approved Warranty, according to Porsche literature, "cover all components of your Porsche" for 12, 24 or 36 months and "all component repairs," and is transferable if the vehicle is sold privately. The list of excluded components does not include the telematics.

82.    New Porsches have a four year 50,000 mile factory warranty. The unused warranty is transferable to any new owners.

83.    Porsche authorized dealers refer to Porsche New Car Warranty as "bumper-to-bumper" which in the industry and the public is known as a comprehensive warranty covering vehicle items between the front and rear bumpers. Most certainly it is understood to cover a vehicles "electronics." Porsche Orlando refers to the warranty as "bumper-to-bumper."

84.     Telematic systems such as Porsche's which offers, *inter alia*, wireless vehicle safety communications are modules/units installed in the Cars which are subsystems of the Cars. Included in these devices are a multitude of "sensors." The same type of "sensors" that tell a vehicle owner when the vehicle's fluid levels are low or when the hood has not latched properly. The latter type of sensors are routinely replaced under warranty as necessary when they become inoperable or unreliable.

### UNCONSCIONABLITY OF DEFENDANTS' CONDUCT

85.     The contractual terms were unreasonably favorable to Defendants since it was fully aware of the 3G only limitations but proposed  class  representative  and  class  members were   unaware.  The bargaining  position  of Defendants  for the sale of Cars was grossly disproportionate  and vastly superior to that of individual  vehicle purchasers,  including  the proposed  class representative  and class members.

86.     Defendants' conduct renders the Cars purchase contract so one-sided as to be unconscionable  under the circumstances existing at the formation  of the vehicle purchase contract.

87.     The durational limitation of the warranties accompanying the Cars is unreasonable  and  unconscionable  since Defendants   actively  concealed the 3G only limitations.  The proposed  class representatives  and class members  had no notice of or ability to detect the issue.

88.     Defendants engaged in unconscionable commercial  practices.

89.     Defendants' unconscionable conduct precludes any exclusion of incidental and consequential  damages  or  any  other  limitation  of remedies. Defendants'  upper-level management orchestrated this wrongful conduct.

90.     The proposed class representative and class members operated and maintained their Cars in conformity with the respective owner's  manual  and  Service and Warranty requirements.

91.     Defendants violated the consumer protection laws of Georgia and Florida together with all other state UCC uniform code express and implied warranty laws with their conduct described in this complaint including but not limited to their failure to disclose material information about the Cars that caused ascertainable financial harm to the proposed class representative and class members.

## CAUSATION

92.     Class members have sustained an ascertainable financial loss.

93.     The proposed class representative and class members have not received the benefit of their bargain concerning their respective purchase of Cars.

94.     If the proposed class representative and class members had been made aware of the 3G only limitations in their respective Cars and the attendant ramifications of value, safety and care,  they would not have purchased the Cars or would have paid less for their vehicles.

95.     As a direct result of these knowing misrepresentations and omissions, the proposed class representative and class members purchased Cars and sustained economic harm since they purchased vehicles worth considerably less than represented.  These misrepresentations diminish the value and increased cost of vehicle ownership.

96.     The wrongful conduct of the Defendants in violation of the consumer protection laws cited herein together with all other similar state consumer protection laws occurred within the limitations period set out in the respective statutes and/or the limitations period as tolled by the Defendants' conduct.

**THE INJURIES SUFFERED BY PLAINTIFF AND OTHER CLASS MEMBERS**

97.     Plaintiff and all purchasers  and lessees of the Cars (who, as detailed below are the members of the putative Classes) have suffered injury  and been damaged by Defendants' unconscionable practices and breaches of its warranties.  Specifically,  Plaintiff  and all members of the putative Class paid for a Car that was represented and warranted by description as including Porsche Connect which could "adapt" to changing technology, but the Cars they received had 3G Only Limitations which eventually rendered the features inoperable.

98.     Plaintiff and all members of the putative Classes received vehicles that were substantially  less valuable than the vehicles that Defendants  represented and warranted to them, due to the failure of Defendants  to deliver the Cars as described.

## COUNT I

### Fraud
### (On Behalf Of The Nationwide Class Or,
### Alternatively, On Behalf Of The Florida Sub-Class)

99.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

100.     Plaintiff brings this count on behalf of himself and the members of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Class.

101.     Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts of the Porsche Connect after they knew of the obsolescence of 3G cellular networks. Defendants concealed and/or omitted material facts in order to reduce costs of manufacturing the Cars and increase their profits. As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

102.     The misrepresentations and omissions were material.

103.    Plaintiff and members of the Classes had a reasonable expectation that the Cars' Porsche connect features were not sold with obsolete components.

104.    Defendants knew their false misrepresentation, concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the planned obsolescence of 3G telematics would allow Defendants to continue to use cheaper telematics components and increase profits. Further, Defendants intended to induce Plaintiffs and members of the Classes into purchasing or leasing the Class Vehicles by promoting Porsche Connect as the latest technology and adaptable to change.

105.    Defendants acted with malice, oppression and fraud.

106.    Plaintiff and members of the Classes reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions. As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the Porsche Connect. Plaintiff and members of the Classes have suffered actual damages in an amount to be determined at trial.

## COUNT II

**Negligent Misrepresentation**
**(On Behalf Of The Nationwide Class Or,**
**Alternatively, On Behalf Of The Florida Sub-Class)**

107.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

108.    Plaintiff brings this count on behalf of himself and the members of the Nationwide Class or, alternatively, on behalf of the Florida Sub-Classes.

109.   Defendants owed a duty to disclose the 3G only telematics powering Porsche Connect to Plaintiff and members of the Classes because Defendants possessed superior and exclusive knowledge regarding the defect.

110.   Defendants negligently misrepresented and omitted material facts regarding Porsche Connect. As a direct result of Defendants' negligent conduct, Plaintiffs and members of the Classes have suffered actual damages.

111.   As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules or elsewhere, to Plaintiffs and members of the Classes the material fact that the Porsche Connect was powered by 3G only telematics, owners and lessees of the Class Vehicles are required to spend thousands of dollars to repair or replace the telematics, or sell their vehicles at a substantial loss.  Plaintiff and members of the Sub-Class had a reasonable expectation that the Cars' telematics was compatible with technology.

112.   Plaintiff and members of the Class would not have purchased the Class Vehicles but for Defendants' negligent false representations and omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System defect, or would have paid less for the Class Vehicles.

113.   Plaintiffs and members of the Classes justifiably relied upon Defendants' negligent false representations and omissions of material facts. As a direct and proximate result of Defendants' negligent false representations and omissions of material facts. Plaintiffs and members of the Classes have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

114.   As a direct and proximate result of Defendants' breach of their express and implied duties, Plaintiff and members of the Class have been damaged in an amount to be proven

24

at trial, including, but not limited to, compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

### Breach of Express Warranty And Implied Warranties
### (On Behalf of A Nationwide Class)

115.    Plaintiff incorporates the foregoing paragraphs  as if fully set forth herein.

116.    This Count is brought on behalf of class members in all states (except Louisiana) under Section 2-314 and 2-315 of the Unfair Commercial Code adopted by 49 states except Louisiana which are the implied warranty of merchantability and the implied warranty of fitness for its intended use and purpose.

117.    Since Porsche offers a written warranty and/or sells service contracts any disclosures of implied warranties are prohibited under federal law and invalid.

118.    This Count is brought on behalf of class members in all state (except Louisiana) under Section 2-313 of the Uniform Commercial Code adopted in model code form by all 49 states other than Louisiana.

119.    Plaintiff brings this claim against Defendants on behalf of himself and the Nationwide  Class for breach of implied and express warranties under the UCC Uniform Code provisions adopted by all states except Louisiana for expenses and implied warranties.

120.    Defendants described Porsche Connect in its advertisements, press releases, specifications provided to dealers,  information provided to the press, and through other media as adaptable to changing technologies which it knew would be communicated  to consumers either directly or indirectly. Defendants' description implied that the Porsche Connect would function as represented for the life the Cars indefinitely.

25

121.    Defendants' warranties were designed to induce Plaintiff and other members of the Class to purchase the Cars.

122.    Defendants' warranties became part of the basis of the bargain  into which Plaintiff and other members  of the Class entered when they purchased the Cars.

123.    Given the modern  significance  of compatibility  of vehicles with cell phones, protocols and wireless standards as represented  by Porsche's  prominent  representations, the natural tendency of the descriptions  of Porsche Connect was to induce the purchase  or lease of the Cars.

124.    Defendants are liable as sellers and/or manufacturers and have separate warranty obligations in each role.

125.    Porsche breached warranties with Plaintiff and other members of the Class by delivering Cars that were not,  and never could be,  compatible  with later generators of service.

126.    By delivering a vehicle with Porsche Connect limited to 3G only and lacking compatibility with next generations, Defendants has breached its warranty by description to the purchasers  and lessees  of the Cars, including  the Plaintiff and members  of the Class.

127.    As a direct and proximate result of Defendants' breach of warranties by description  with Plaintiff  and the members  of the Class, Plaintiff and the members  of the Class did not receive  the full benefit of their bargain  and suffered damage by receiving  vehicles  that were less valuable than the vehicles  that Defendants had represented  to them,  and by paying out-of-pocket  costs in order to ensure that the Cars Porsche Connect features could operate on next generation facilities.

128.    Defendants are liable to Plaintiff and the members of the Class for all damages caused by Defendants' breach  of express warranties  by description.

## COUNT IV

### Unjust Enrichment

129.    Plaintiff incorporates the foregoing paragraphs as if set forth fully in this count.

130.    The Defendants benefited financially from their breaches of warranty and misrepresentations as described in this complaint.

131.    The proposed class representative and class members sustained monetary damages as described in this complaint.

132.    Allowing the Defendants to retain their monetary enrichment from their wrongful and unlawful acts would be unjust and inequitable.

133.    The proposed class representative  and class members request that the Defendants disgorge their profits from their wrongful  and unlawful conduct and that the Court establish a constructive  trust funded by the benefits conferred upon the Defendants  as a result of their wrongful  conduct.  The proposed  class representative   and class members  should be designated beneficiaries  of the trust  and obtain  restitution  for their  out-of-pocket  expenses caused  by  the Defendants' conduct.

134.    Wherefore, the proposed  class representative and class members  demand judgment against Defendants for multiple  damages,  interest,  costs and attorneys'  fees.

## COUNT V

### Violation Of Florida Deceptive And Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *Et Seq.* (On Behalf Of The Florida Sub-Class)

135.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

136.     Plaintiff brings this claim on behalf of himself and members of the Florida Sub-Class.

137.     The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices" and "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

138.     Plaintiff and members of the Florida Sub-Class are "consumers" and "interested parties or persons" under the FDUTPA. Fla. Stat. § 501.203(6) and (7).

139.     Defendants are engaged in the conduct of "trade or commerce" as defined by the FDUTPA. Fla. Stat. § 501.203(8).

140.     One of the primary purposes of the FDUTPA is to "protect the consuming public" from "those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

141.     Defendants committed unfair or deceptive acts or practices, affirmative misrepresentations, material omissions and/or otherwise violated the FDUTPA. Defendants intentionally and knowingly misrepresented the Porsche Connect and the Cras and intentionally and knowingly failed to disclose and concealed the #G only telematics. Defendants' misrepresentations and omissions constitute unfair acts or practices in violation of the FDUTPA because they offend public policy, are immoral, unethical, oppressive, or unscrupulous and/or cause substantial injury to consumers.

142.     Defendants knew or should have known that the Cars were defective at the time of sale or lease. Given the latent nature of the defect, Defendants knew, or should have known, that the inoperability of the 3G only Porsche Connect would occur outside of the coverage periods of the manufacturer's warranties.

28

143.    Defendants owed a duty to disclose the 3G only Telematics to Plaintiff and members of the Florida Sub-Class because they possessed superior and exclusive knowledge. Rather than disclose the defect, Defendants engaged in deceptive trade practices in order to sell additional Cars Vat higher profits and wrongfully transfer the cost of repair or replacement of the 3G only telematics to Plaintiff and members of the Florida Sub-Class.

144.    Defendants have knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein. Further, Defendants unconscionably marketed the Cars to uninformed consumers in order to maximize profits by selling additional Cars containing the undisclosed latent defect at higher profits.

145.    Defendants' unfair or deceptive acts or practices, affirmative misrepresentations and/or material omissions were likely to mislead a reasonable consumer and misled Plaintiff and members of the Florida Sub-Class. When Plaintiff and members of the Florida Sub-Class purchased or leased their Cars, they reasonably relied on the reasonable expectation that the telematics would last at least beyond the warranty periods without need for repair or replacement and would not pose an unavoidable safety risk. Had Defendants disclosed that the telematics were 3G only obsolete. Plaintiff and members of the Florida Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles. Further, had Defendants disclosed the 3G only telematics would not last beyond the warranty periods without need for repair or replacement, Plaintiff and members of the Florida Sub-Class would have demanded repair or replacement during the warranty periods at no cost—as provided for in Defendants' warranties.

146.    Defendants' unfair or deceptive acts or practices, affirmative misrepresentations and/or material omissions are substantially injurious to consumers. As a direct and proximate

result of Defendants knowing, intentional concealment and omissions in violation of the FDUTPA, Plaintiff and members of the Florida Sub-Class have suffered harm and/or continue to suffer harm, and/or actual damages in the amount of the cost to replace or replace the telematics, and damages to be determined at trial. Plaintiff and members of the Florida Sub-Class have also suffered the ascertainable loss of the diminished value of their vehicles.

147.     As a result of Defendants' FDUTPA violation, Plaintiff and members of the Florida Sub-Class are entitled to, inter alia, injunctive and declaratory relief, actual damages, costs and attorneys' fees. See Fla. Stat. § 501.211.

## COUNT VI

**Violation Of The Georgia Uniform Deceptive**
**Trade Practices Act, Ga. Code Ann. §§ 10-01-370 *Et Seq.***
**(On Behalf Of Plaintiff Abel And The Nationwide Class)**

148.     Plaintiff Abel incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

149.     Plaintiff  asserts this count on behalf of himself and the nationwide class.

150.     Georgia's statutes are applicable to Defendants and available to all class members nationwide because Defendants are doing the business from Georgia.

151.     Plaintiff and Class members are persons within the context of the Georgia Uniform Deceptive Trade Practices Act (hereinafter "GUDTPA"), Ga. Code Ann. §§ 10-1-370 et seq. and specifically § 10-1-371(5).

152.     Plaintiff and the Class purchased and/or leased Class Vehicles for personal, family or household use.

153.     Defendants are persons within the context of GUDTPA, Ga. Code Ann. §§ 10-1-370 et seq. and specifically § 10-1-371(5).

154.    Defendants are engaged in deceptive trade practices in Georgia within the context of GUDTPA, Ga. Code Ann. § 10-1-372(5), (7), (9) and (12) as described in this complaint.

155.    Defendants committed unconscionable, deceptive and unfair trade practices in the course of trade and commerce within the context of the GUDTPA as described in this complaint.

156.    Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Porsche Connect and the Cars with intent that Plaintiff and members of the Class would rely upon their misrepresentations and omissions in connection with the sale and/or advertisement of Class Vehicles.

157.    Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff and members of the Georgia Class the 3G only telematics.

158.    Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff and members of the Georgia Class the characteristics of the Cars telematics. Defendants extensively advertised that Cars were superior in their technology.

159.    Defendants actively suppressed the fact that the Cars were built with 3G only telematics.

160.    Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances. As reasonable consumers, Plaintiff and members of the Class had no reasonable way to know that the Cars had 3G only telematics. Any reasonable consumer under the circumstances would have relied on the representations of Defendants who alone possessed this knowledge.

161. If Defendants had not concealed the 3G only telematics from Plaintiff and members of the Class within the express warranty period, the Cars would have been repaired without cost to purchasers as promised under the original warranty.

162. Defendants fraudulently concealed unmistakable manifestations of impending inoperability of the telematics within the express warranty period without inspecting, repairing or replacing the 3G only telematics.

163. Defendants violated the GUDTPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period of the 3G only telematics.

164. As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff and members of the Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

165. The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

166. Plaintiff Smith and members of the Georgia Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays for relief in the form of an order as follows:

a.      Certifying this action as a class action under Federal Rule of Civil Procedure 23, and appointing Plaintiff as class representative and his attorneys as class counsel;

b.      Awarding actual damages to Plaintiff and the Members of the Class;

c.      Awarding attorneys' fees, expenses, and the costs of this suit, together with prejudgment and post-judgment interest at the maximum rate allowed by law; and

d.      Awarding such other and further relief which the Court finds just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims  so triable.

Dated: September 18, 2023

SQUITIERI & FEARON, LLP


By:*/s/Lee Squitieri*
         Lee Squitieri
305 Broadway
7th Floor
New York, New York 10007
(212) 421-6492