## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ROBERT JOHN ABEL, on behalf of himself and all others similarly situated, <br><br>                  Plaintiff, <br><br>       v. <br><br> PORSCHE CARS NORTH AMERICA, INC. and DR. ING h.c. F. PORSCHE AG, <br><br>                  Defendants. | Case No.: 6:24-cv-00593-PGB-DCI <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

       Plaintiff Robert John Abel alleges for his second amended class action complaint the following through his attorneys Squitieri & Fearon, LLP, on behalf of himself and all others similarly situated based on personal knowledge as to his own vehicle and upon information and belief as to all other matters.

## PRELIMINARY STATEMENT

       1.      This is a class action brought by the Plaintiff, Robert John Abel ("Plaintiff"), on behalf of himself and all other similarly situated purchasers and lessees of Porsche vehicles from model years 2014 through 2019 which, with the sunsetting of 3G services by wireless carrier partners, will no longer be able to operate the functions of the "Porsche Connect" systems installed in the "Cars," as detailed herein.

       2.      Defendant Porsche Cars North American, Inc. ("Porsche N.A.") is the United States based subsidiary of Defendant Dr. Ing. h.c. F. Porsche AG ("Porsche AG") (collectively "Porsche"). Porsche has admitted and identified the models and years of the cars with now inoperable "Porsche Connect" features. Defendants made numerous representations and provided warranties in their marketing of the Cars regarding the Porsche Connect systems, when in fact, the Cars' Porsche Connect features were only temporary due to the defective manufacture and

defective design of Porsche's factory equipped 3G telematics systems which was built to be operative <u>only</u> on a 3G network installed in the Cars. The Cars' internet enabled features such as roadside emergency safety features were rendered inoperable after the 3G phase out in 2022 due to Defendants' use of obsolete telematics equipment they installed in the cars.

3.     The cars affected are: "911" for model years 2017-2019; "Cayenne" for 2015-2019; "Macan" for 2017-2018; "718" for 2017-2021; "Panamera" for 2014-2018 and the "918 Spyder" for 2014 (collectively the "Cars").

4.     Defendants' representations about Porsche Connect were false and misleading.  In the months and years following the introduction of Porsche Connect in the early 2010s, as the phasing out of 3G service was being planned and 4G and 5G service was being phased in, Defendants never disclosed after model year 2021 was issued that the "telematics" in the Cars had been built and installed with 3G only capabilities and that Porsche Connect would not be operable on any generation beyond 3G (hereinafter referred to as "3G Only Limitations").

5.     By making ubiquitous misrepresentations about Porsche Connect and the Cars, and by failing to honor their "bumper-to-bumper" warranties, Defendants (i) engaged in deceptive  acts in violation  of Florida consumer fraud statutes; (ii) breached express and implied warranties under UCC uniform code provisions adopted by Florida; and (iii)  committed other wrongdoing.  Defendants are liable to Plaintiff and all other similarly  situated members  of the Class defined below for all damages  resulting  from the claims herein.

6.     This action was commenced to obtain recompense for diminution in value and/or overcharges for Cars whose telematics were rendered inoperable when 3G as phased out, and/or to recover the costs to repair, retrofit or replace the 3G telematics or if necessary the Cars.

## PARTIES

7.     Plaintiff Robert John Abel ("Abel") is a resident of the state of Florida who purchased a 2018 Porsche Panamera in or about July, 2018 from Porsche of Orlando ("Vehicle") as a "new vehicle." Marketing materials promoting the Vehicle promised Porsche Connect features. Abel paid approximately $130,000 for his new Porsche in 2018. Under his claims herein, an appropriate remedy is to replace his vehicle with a new vehicle. A new Panamera price range is from $93,000 to $148,000. Porsche of Orlando is an authorized Porsche dealer appointed by Porsche pursuant to a Dealer Sales And Service Agent which require the dealer to operate and comply with Porche's "Dealer Operating Standards."

8.     Porsche Cars North America, Inc. ("Porsche N.A.") is a Delaware corporation with its principal place of business located at 1 Porsche Drive, Atlanta, Georgia 30354. Porsche N.A. is a wholly-owned U.S. subsidiary of Defendant Porsche AG.

9.     Porsche N.A. (i) is the exclusive distributor of Porsche automobiles in the United States; (ii) imports into and marketed Porsche automobiles in the United States, and sold Porsche automobiles to authorized Porsche dealers, who in turn sold and leased Porsche automobiles to purchasers and lessees;  (iii) provided marketing,  sales, parts, service, technology, and training support to Porsche automotive retailers in the United States; and (iv) performing these functions, Porsche has created and disseminated the misrepresentations described in this complaint.

10.     Defendant Dr. Ing. h.c. F. Porsche AG ("Porsche AG") is a German corporation with its principal place of business located in Stuttgart, Germany. Porsche AG designs, develops, manufacturers, and sells luxury automobiles. Porsche AG engineered, designed, developed, manufactured, and installed the telematics control unit on the Cars and exported these vehicles with the knowledge and understanding that they would be sold throughout the United States. On

information and belief, Porsche AG also reviewed and approved the marketing and advertising campaigns designed to sell the Porsche-branded Cars and drafted the warranties.

11.     Porsche AG controls and oversees all aspects of Porsche's operations including marketing. Porsche AG is responsible for all manufacturing "specs" of the Cars including the use and/or installation of 3G Only telematics which are the subject of this litigation. Porsche AG has designed and manufactured the Cars defectively with Porsche Connect telematics which were 3G only and failing to properly label the Porsche Connect. Porsche Connect with 3G only telematics were inoperable with the phasing out of 3G.

12.     Porsche developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Cars.

## JURISDICTION

13.     This Court has jurisdiction  pursuant to 28 U.S.C.  §§ 1332( d) the Class Action Fairness Act ("CAFA") because (1) this action is a "class action," which contains class allegations and expressly seeks certification of a proposed class of individuals;  (2) the putative Class consists of more than one hundred proposed class members;  (3) the citizenship  of at least one class member is different  from Defendants' citizenship  (Delaware, Georgia and Germany); and (4) the aggregate  amount in controversy  by the claims of Plaintiff and the putative Class exceeds $5,000,000,  exclusive of interest and costs. Jurisdiction is also appropriate under 28 U.S.C. 1367(a) and 28 U.S.C. 1332(a)(1) and (a)(2) because Plaintiff is a citizen of Florida, Defendants are citizens of Georgia, Delaware or Germany and the amount of controversy (the Vehicle) exceeds $75,000.

14.     This Court also has personal jurisdiction over Defendants  because Defendants conduct substantial operations and earn substantial revenues from activities in Florida.

15.     Venue is proper in this jurisdiction  pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District due to the activities of Defendants in this District.

## CLASS ACTION ALLEGATIONS

16.     Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

17.     Plaintiff brings this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Class consisting of:

> All persons who purchased or leased a Car in Florida with
> "Porsche Connect" with 3G Only Limitations (the "Class").

18.     Plaintiff reserves the right to amend the definition of the Class.

19.     This action is properly maintainable as a class action.

20.     There could be over 30,000 members of the Class based upon Porsche's own public figures of "Affected Models" and "Affected Model Years" sold by Porsche in Florida with telematics. Accordingly, joinder of all members is impractical.

21.     Common questions of law and fact exist as to all members of the Class and predominate over any questions  solely affecting individual members of the Class. Among questions of law and fact in common to the Class are:

a.     Whether Defendants breached seller's and/or manufacturer's warranties under Florida law;

b.     Whether Defendants misrepresented the 3G Only Limitations features of Cars;

c.     Whether Defendants manufactured, marketed and/or sold the Cars fraudulently after knowing the date of carriers' phase out of 3G;

d.      Whether Defendants in its marketing and sale of the Cars violated the consumer protection laws of Florida;

e.      Whether Defendants were unjustly enriched; and

f.      The extent of damages/diminution in value/overcharges resulting from the 3G Only Limited Telematics in the Cars.

22.      Plaintiff's claims are typical of the claims of each member of each of the Class in that Plaintiff alleges a common course of conduct by Defendants toward each member of the Class. Specifically, Defendants violated the consumer protection laws of Florida and/or breached its warranties with each member of the Class and/or made materially false statements and omissions. Plaintiff and the other members of the Class seek identical remedies under identical legal theories. There is no antagonism or material factual variation between Plaintiff' claims and those of the Class.

23.      Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel who have extensive experience prosecuting class actions and who, with Plaintiff, is fully capable of, and intent upon, vigorously pursuing this action. Plaintiff has no interest adverse to the Classes.

24.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Furthermore, the damage that has been suffered by any individual Class member is likely not enough to sustain the expense and burden of individual litigation. Hence it would be impracticable for all members of the Class to redress the wrongs done to them individually. There will be no difficulty in the management of this action as a class action.

25.     The prosecution of separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to the individual Class members, which could establish incompatible standards of conduct for Defendants. In addition, adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of the interests of the other members of the Class not parties to such adjudications, or could substantially impede or impair their ability to protect their interests.

26.     The members of the Class are readily identifiable through Defendants' records.

27.     Defendants have acted on grounds generally applicable to the Classes with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Classes as a whole.

## SUBSTANTIVE ALLEGATIONS

### A.     Background

28.     Porsche cars have been sold in the USA since the 50s.

29.     The Cars are equipped with "Telematics Control Units" ("telematics") connected to the engine control module which are the instruments which connect the Porsche to internet service. *See* http://www.tomorrowstechnician.com/Porsche-telematics. December 15, 2020 by Andrew Madiel. Last accessed August 28, 2022. The Porsche Connect features depend on the equipment and technology of the telematics systems installed at time of manufacture in the Cars, not contracts with service providers.

30.     Wikipedia defines a telematic control unit as "the embedded system on board the vehicle . . ." which consists of "a satellite navigation (GNSS) unit . . . an external interface for mobile communication . . . an electronic processing unit . . . a microcontroller, microprocessor or

field programmable gate array . . . a mobile communication unit . . . [and] memory." *See* Wikipedia "Telematic Control Unit" https://en.wikipedia.org/wiki/Telematic_control-unit

31. The Porsche telematics system became known as "Porsche Connect."

32. As the public became increasingly aware of the capabilities and benefit of telematics, car buyers began to demand the connectivity feature from car makers. The benefits are tangible and can be valued and include, *inter alia*,  reduced insurance premiums and vehicle diagnosing capabilities which reduce service costs, and fuel expenses. *See* https://www.incartelematics.com/faq-items/what-cars-have-telematics (March 2021) last accessed August 27, 2022.

33. When 3G became available Porsche installed 3G capable telematics in the Cars but the telematics modules after the 2G version (which Porsche made so they could be retrofitted) were 3G only and could not be retrofitted. In the field of cellular mobile connections, a "generation" such as "3G" generally refers to a change in the fundamental nature of the service, non-backwards compatible transmission technology, higher peak bit rates, and new frequency bands. Cellular connectivity has characteristic of technology, speed, frequency and spectral capabilities which are constantly being improved upon.

34. All manufacturers of 3G devices have long known that 3G was "spectrally inefficient" and would be phased out as early as possible. Porsche knew as a result of this as a its manufacturing operation integration agreement with Volkswagen which was a member of 56 AA. (*See* infra 45-47).

35. In January 2008, the FCC auction for 700 MHZ spectrum began with Verizon Wireless and AT&T winning the biggest share after having stated their intentions to support LTE a/k/a 4G LTE, the next generation after 3G.

36.     As early as August 2009, carriers supporting 3G began planning their upgrade to 4G LTE. On December 14, 2009 Telia Sonera became the first carrier to offer customers 4G services. *See* "First in the World with 4G Services," Telia Sonera Press Release December 14, 2009. Accordingly, Defendants knew of the imminent obsolescence of 3G and that industry standards were rapidly advancing.

### B.     Defendants' Marketing And Promotions

37.     In 2014, Defendants marketed their 2014 model year cars with Porsche Connect. The Porsche Connect feature of the 3G only telematics was promoted throughout 2021. In marketing the Porsche Connect, Defendants made substantial  efforts  to highlight and promote the features of Porsche Connect to distinguish the Cars from its competitors' automobiles  by marketing  it as more technologically advanced than the competition.

38.     Porsche's promotional materials promised:

**Porsche Connect App Overview**

*What is Porsche Connect?*

Designed as a proprietary connectivity and communication system, Porsche Connect helps you stay up-to-date on current news events, manage incoming text messages and phone calls, navigate your way through dense traffic, and stay linked to your Porsche vehicle. From locking the doors to accessing vehicle information, Porsche Connect transforms your smartphone into the perfect remote control for your Porsche.

Porsche Connect can be found across the entire Porsche lineup. Porsche Connect Plus is included as standard on 911, Panamera, and Cayenne models. Porsche Connect and Porsche Connect Plus are options on 718 Boxster, 718 Cayman, and Macan models.

Unlock the full potential of your Porsche with Porsche Connect. Our intelligent services provide you with more ways to experience your Porsche than ever before. Enjoy an excellent analog driving experience that has been perfectly integrated into the digital world.

The digital services offered vary by vehicle model, model year and specific country availability. To find out more, compare the service availability of the individual models in the <u>Porsche Connect Store</u> or log in with your <u>Porsche ID</u> to learn about the Porsche Connect services available for your vehicle.

•••

The following provides you with comprehensive information on Porsche Connect and our digital services. Discover the latest models and their feature highlights.

**This is Porsche Connect**

**General**

With Porsche Connect, your digital co-driver is always on board. The wide range of services helps you to have the most comfortable and modern driving experience possible: before, during and after your trip.

Real-time information and seamless communication bring the digital and real worlds together.

**Functions on Demand – Your Special Features in a Single Tap**

For the first time, customers are able to purchase and use individual functions after the purchase of the car. In the Taycan, Functions on Demand can be enabled over the air. This means there is no need for time-consuming trips to the workshop. Instead, new features are just a tap away. So, get ready for the future – in your Porsche.

The same basic representations were made for every "Affected Model Year."

39.     Porsche incorrectly described the Porsche telematics by failing to disclose that

they were 3G-only telematics.

**C.     <u>Class Members Cars Had Defective Telematics</u>**

40.     The Cars were factory equipped with 3G only telematics devices but by 2014 3G

was 3G already being replaced by 4G LTE.

41.     Consumer Reports succinctly described the situation:

"As wireless carriers shut down their 3G networks over the coming months, millions of cars are losing the ability to automatically contact first responders after a crash…
Automatic crash notification, which alerts first responders via a built-in cellular connection, often relies on aging 3G cellular networks to connect drivers with emergency services and share a vehicle's location. Even though automakers have been aware that these networks are shutting down permanently between February and July, many manufacturers still relied on it until as recently as the 2021 model year."
"Shutting down the 3G network to prioritize newer technologies is positive in the long run," says Alex Knizek, an automotive engineer at CR. "But it is disappointing that some automakers have failed to offer a solution to owners of 3G-connected vehicles, leaving them unable to take advantage of proven and valuable safety features, as well as other beneficial connectivity functions."

The reason is cost savings, according to Roger Lanctot, director of automotive connected mobility at Strategy Analytics, a consulting firm. "It's the last chapter of the automakers adopting the least-expensive connectivity module they can find," he says. Only recently did automakers start future-proofing newer models. "It's a challenge for the industry, but going forward, automakers recognize that they need to put the latest connectivity in."

In addition to crash notification, many vehicles also have an SOS button to contact emergency services, and a lot of those buttons still use a 3G network. It's usually red and located near the vehicle's dome light or rearview mirror. Some cars may also use 3G connectivity for convenience features such as remote unlocking, remote start, emergency roadside assistance, navigation map updates, and vehicle diagnostics. These and other features will no longer work without an upgrade to newer 4G or 5G technology.

"What a mess," says William Wallace, CR's manager of safety policy. "Wireless carriers, federal regulators, and some automakers seem content to leave people out to dry, even if it means they lose access to a potentially lifesaving technology. Every automaker should deliver to its customers the services they've been promised—without charging them extra—and lawmakers should get ahead of the game to keep this from ever happening again in the future."

42.     There was no disclosure or even suggestion that the 3G only Porsche Connect would be inoperable once 3G was phased out or that the Porsche Connect feature was only temporary or had only a limited life. As the later Porsche model years after 4G became prevalent, Defendants never disclosed that its telematics equipment in the Cars was 3G only or that the Car telematics "life span" was far far less than the average 10 year life span of a Porsche. To the contrary, Defendants marketed Porsche Connect as a permanent feature of the Car adaptable to new technology.

43.     Porsche never informed class members of <u>any</u> of the 3G Only Limitations.

44.     From 2014-2019, Defendants sold 47,007, 51,756, 54,280, 55,420, 57, 202 and 61,568 cars in the USA, respectively for 2014-2019 consisting of the 911, 718, Panamera, Cayenne, Macan and Taycan models.

### D.      Porsche Knew Of Imminent New Generations Of Wireless Technology That <u>Would Make Their 3g Only Telematics Inoperable</u>

45.     Volkswagen AG owns a substantial stake in Defendant Porsche AG. VW AG and Porsche SE (100% owner of defendants and holder of VW's majority rights) reached an agreement in 2011 to form an "Integrated Automotive Group" to share manufacturing operations. *See* https://llen.wikipedia.org/wiki/Porsche SE (accessed October 11, 2024). VW is a member of the 5G AA Automatic Association ("5G AA") a "registered voluntary association" founded in September 2016 by Audi AG (owned by Volkswagen AG), Daimler AG and five major 5G patent holders. "5G AA was created to connect the telecom industry to vehicle manufacturers to develop end-to-end solutions for future mobility and transportation services." Christopher Voight Chairman of the 5G AA Board.  *See* https://5gaa.org last accessed August 27, 2022.

46.     5G AA promoted CV2X which, as designed, early on provided a migration path from earlier 3G generation to the anticipated 5G based systems and services. *See* https://enom.wikipedia.org/wiki/Vehicle-to-everything last accessed August 27, 2022.

47.     As a result of Porsche SE's ownership of Volkswagen AG and VW's membership in of 5G AA and Porsche manufacturing integration with VW, Porsche was very aware of 3G's almost automatic obsolescence in Porsche cars as soon as it was introduced.

48.     Defendants could have, but chose not to, design, manufacture, build or install telematics to be capable with the to be capable with the latest generation of cellular connectivity which could allow the devices to continue to connect to wireless "generations" following 3G.

49.     Defendants had the capability to retrofit its telematics and did so to its 2G telematics once 3G became the prevalent technology, but the Cars 3G only telematics cannot be retrofitted.

50.     Even after designing manufacturing and installing the 3G Only Telematics in the Cars, a technology "fix" for the 3G phase out was not impossible, or even difficult. It would have been costly however, but Defendants could have done it, or planned in advance by recalling cars and installing upgrades to add 4G and/or 5G capabilities.

51.     Defendants also could have integrated a swappable SIM card into its telematics module which could have allowed the system to upgrade itself to 4G LTD or 5G, but Porsche did not do that.

52.     The 3G phase out does not necessarily automatically disable all devices working on that protocol as it has in the Cars. For example, the iPhone 3GS can connect to Wi-Fi to access internet applications even after the 3G phase out. *See* https://www.zdnet.com/google-amp/home-and-office/_____/3g-is-shutting-down-here-are-the-gadgets-that-still-rely-on-it-

do-you-have-one/ ZDNET, June Wan, April 8, 2022. Last accessed August 27, 2022. Software

upgrades have been developed to extend the connectivity life of 3G driven devices. *Id.* Google's

Pixel 2 was released in October 2017 with hardware/software that could support 4G LTE and

had been pre-armed as early as March 2017. In addition, AT&T connected iPhone 6 and Galaxy

S4 Mini and later Samsung Galaxy modes and Pixel 2 Goggle models will all continue to work

after the 3G phase out as will older phones from Motorola and LG. While Porsche continued to

install, promote and sell the 3G only devices, through the end of the Class Period, the major

cellular providers have been preparing for years and hence most mobile/smartphone customers

are on the 4G and/or 5G network. *See* https://www.verify-

this.com/article/mews/verify/technology-verify/you-will-have-to upgrade-replace-phone-to4g-

5g-in 2022-if-you-have-3gVerizon-att-T-Mobile-all-phasing-out-3g/635-e733678c-clcd-485d-

9793-7f97c003bcb9  last accessed August 28, 2022.

     53.    Accordingly, the 3G obsolescence issue was entirely foreseeable. Jeremy Barnes,

a spokesperson for Mitsubishi, was quoted in Consumer Reports about the 3G phase out:

       "We foresaw this time coming and designed around it"

     54.    Defendants did not design, manufacture or install the telematics to be able to

transition to successors to 3G due to a desire to save on manufacturing costs. *Id*. quoting Ruger

Lanfot, Director of Automotive Connected Mobility at Strategy Analytics. *See also*, Dow Jones

EE/Times "3G's Final Sunset Has Begun" https://www.eetimes.com/3gs-final-sunset-has begun/

     55.    By contrast, General Motors, whose 2015 and later models of Chevrolet, Buick,

GMC and Cadillac all had the "OnStar hardware" affected adversely by the 3G sunsetting,

announced to its customers:

> In 2021, OnStar began working with AT&T on network updates and started executing over-the-air software updates to ensure Members were not impacted by the network transition.

GM committed to automatically send "over-the-air" software updates free of charge to address the 3G phase-out.

### E.   Sunsetting Of 3g And Loss Of Porsche Connect Features In The Cars

56.   Published reports indicate that as early as mid-2018, some carriers warned that the shutdown of the <u>entire</u> 3G cellular network was imminent. *See* Peter Giacolone, "Looking Back at When 3G Sunset Efforts All Started" April 15, 2022; https://www.securitysales.com/fire-intrusion/looking-back-3g-sunset/

57.   In July 2018, Verizon warned that it would shut its 3G network by December 30, 2019. That date was postponed briefly, then again. In February 2019, AT&T announced a plan to "sunset" its 3G network. *See* http://www.business.ATT.com/explore/make-the-switch.html last accessed August 27, 2022. 3G "sunsetting" means that a mobile network operator (or carriers) shuts off the cellular infrastructure required to operate devices based on 3G technology.

58.   When the sunsetting was announced in February 2019, neither Plaintiff nor class members were told either at time of purchase or in February 2019, that the Cars' telematics would also be inoperable.

59.   Notwithstanding that announcement, Porsche sold tens of thousands of 2019 model year 718s, 911s and Cayennes, and tens of thousands more model year 2020 and 2021 718s with 3G Only Telematics.

60.   According to recent Porsche announcements:

> As a result of the sunset of 3G service by wireless carrier partners by February 2022, Porsche vehicles factory-equipped with 3G telematics devices or retrofitted 2G vehicles will no longer be able

to receive any ConnectedDrive/Porsche Assist services. Some vehicles factory-equipped with 4G telematics devices will no longer have access to services that require a voice connection, such as PORSCHE Assist eCall and Concierge Services, but will continue to receive certain ConnectedDrive/Porsche Assist services such as Advanced Real-Time Traffic Information, Remote Services and Porsche Online depending on you Porsche model.

61.    The services affected by the phase out of 3G in the Cars are all Porsche Car Connect services and Porshe offered Remote, Safety and Security Services. Remote services include, *inter alia*, "remote vehicle status," and "car finder." "Safety" services include "airbag deployment notification" and "breakdown call with telematics data transaction." "Security" services include "advanced theft detection (sabotage, unauthorized movement, etc.).

**F.    Affected Porsche Models And Years Making Up The Class**

62.    Porsche announced the following "Affected Models" and "Affected Model Years" in its website:

| Affected Models | Affected Model Years |
| --- | --- |
| 911 | 2017 – 2019 |
| Cayenne | 2015 – 2019 |
| Macan | 2017 – 2018 |
| 718 | 2017 – 2021 |
| Panamera | 2014 – 2018 |
| 918 Spyder | 2014 |

**G.    Defendants' Concealment And Omissions
Caused Loss And Damage To Class Members Car Buyers**

63.    Had the Defendants truthfully disclosed and reported that its Porsche Connect telematics for the Cars were 3G only, consumers would have been less likely to purchase the cars, would have abstained outright or sought substantial discounts and/or upgrades.  As a

proximate cause of Defendants' misrepresentations detailed in this complaint,  Plaintiff and class members  purchased  Class Vehicles  in reliance  on Defendants'  misrepresentations  and omissions in  the  mistaken belief that their Porsche Connect feature was permanent, not obsolete when sold, and/or the Porsche Connect telematics could adapt to changing technology.

64.     Plaintiff and the class members who purchased Cars did not get the benefit of the bargain  they  struck.  Instead, they received Cars whose Porsche Connect telematics had planned obsolescence and were therefore of lesser value because the Porsche Connect was destined for obsolescence as soon as it was issued. The Cars  that Plaintiff and the class  members  paid  for and bargained  to receive,  while  marketed  as products with Porsche Connect telematics were of lesser value than as advertised.  Accordingly, purchasers  of the Cars,  including  Plaintiff and class members,  have suffered and will continue  to suffer injury, ascertainable  losses  of money or property,  and monetary  and non-monetary damages,  including from not receiving  the benefit  of their bargain  in purchasing  the Cars.

65.     The Defendants' misrepresentations, omission and other deceptive  conduct in failing to truthfully disclose to prospective  buyers that the Cars were 3G Only caused  Plaintiff and  class  members  substantial  injury  in the  form  of price  premiums  and overpayments for products and diminished resale value and loss of telematics benefits described herein that are severely  limited.

**H.     Tolling**

66.     **Tolling of the Limitations Period** Defendants  had  actual  knowledge  for several  years  that  the  marketing  and advertising  of its Cars  was deceptive  and misleading.

67.     **Continuing Act Tolling** Beginning in or around 2014, Defendants continuously marketed and sold the Cars to unsuspecting car buyers.  Defendants  continuously represented

these vehicles could adapt to technology.  By continuously repeating these false representations and failing to disclose that the Cars were 3G only Defendants engaged in a continuing wrong sufficient to render inapplicable any statute of limitations or warranty limitation that Porsche might seek to apply.

68.     At all relevant times, Defendants knew that they were concealing and misrepresenting material facts, but continued to misrepresent and conceal information in its marketing and sales materials.  Plaintiff and class members' claims are not time barred.

69.     **Fraudulent Concealment Tolling** State consumer protection  laws,  together with the doctrine of equitable tolling and/or the discovery rule, toll the applicable statutes of limitations for all class members because of Defendants' conduct,  including but not limited to concealment and omission of material facts.

70.     This duty to disclose arose, among other things, due to the  Defendants' control over manufacturing, marketing and representations about the Cars and Porsche Connect.

71.     Defendants knew about the 3G Only Limitations of the Cars ever since they manufactured the 2014 model years.

72.     Despite  their  knowledge,  Defendants  actively  concealed  this  material information from the Plaintiff and other class members.

73.     Defendants actively concealed the information to continue to profit from their sale and prevent Plaintiff and other class members from bringing suit or otherwise seeking redress.

74.     Plaintiff and class members justifiably relied on Defendants to disclose the true nature of the Cars they purchased, because the truth was not discoverable by Plaintiff and the other class members through reasonable efforts. Any applicable warranty limitation statute  of

limitations has been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

75.    Defendants are estopped from asserting that statutes of limitations were running for the duration of time Class Members were unaware of Defendants' misrepresentations.

76.    Additional information supporting allegations of misrepresentations is in the control of the Defendants.

77.    Material information concealed and/or actively suppressed by Defendants includes but is not limited to the 3G Only Limitations, described in the preceding paragraphs.

78.    Defendants had a duty to disclose to Class members the 3G Only Limitations.

79.    Defendants breached express and implied warranties and actively and affirmatively misrepresented, concealed and suppressed, both pre-sale and post-sale, the existence of the 3G Only Limitation.

## I.    Unconscionability Of Defendants' Conduct

80.    The contractual terms were unreasonably favorable to Defendants since it was fully aware of the 3G only limitations but proposed class representative and class members were unaware. The bargaining position of Defendants for the sale of Cars was grossly disproportionate and vastly superior to that of individual vehicle purchasers, including the proposed class representative and class members.

81.    Defendants' conduct renders the Cars purchase contract so one-sided as to be unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

82.    The durational limitation of the warranties accompanying the Cars is unreasonable and unconscionable since Defendants actively concealed the 3G only

limitations.  The proposed  class representatives  and class members  had no notice of or ability to detect the issue.

83.     Defendants engaged in unconscionable commercial  practices.

84.     Defendants' unconscionable conduct precludes any exclusion of incidental and consequential  damages  or  any  other  limitation  of remedies.  Defendants'  upper-level management orchestrated this wrongful conduct.

85.     The proposed class representative and class members operated and maintained their Cars in conformity with the respective owner's  manual  and  Service and Warranty requirements.

86.     Defendants violated the consumer protection laws of Georgia and Florida together with all other state UCC uniform code express and implied warranty laws with their conduct described in this complaint including but not limited to their failure to disclose material information about the Cars that caused ascertainable financial harm to the proposed class representative and class members.

### J.     Causation

87.     Class members have sustained an ascertainable financial loss.

88.     The proposed class representative and class members have not received the benefit of their bargain concerning their respective purchase of Cars.

89.     If the proposed class representative and class members had been made aware of the 3G only limitations in their respective Cars and the attendant ramifications of value, safety and care,  they would not have purchased the Cars or would have paid less for their vehicles.

90.     As a direct result of these knowing misrepresentations and omissions, the proposed class representative and class members purchased Cars and sustained economic harm

since they purchased vehicles worth considerably less than represented.  These misrepresentations diminish the value and increased cost of vehicle ownership.

91.    Plaintiff and all purchasers  and lessees of the Cars (who, as detailed below are the members of the putative Classes) have suffered injury  and been damaged by Defendants' unconscionable practices and breaches of its warranties.  Specifically,  Plaintiff  and all members of the putative Class paid for a Car that was represented and warranted by description as including Porsche Connect which could "adapt" to changing technology, but the Cars they received had 3G Only Limitations which eventually rendered the features inoperable. Considering the prominence given to the Porsche Connect features which required an operable telematics to be realized, and the indispensability of connectedness for safety, Plaintiff and class members were deprived of the benefit of the bargain.

92.    Plaintiff and all members of the putative Classes received vehicles that were substantially  less valuable than the vehicles that Defendants  represented and warranted to them, due to the failure of Defendants  to deliver the Cars as described.

## COUNT I

### Fraud
### (On Behalf Of The  Class)

93.    Plaintiff incorporates and realleges each paragraph 1-92 as though fully set forth herein.

94.    Plaintiff brings this count on behalf of himself and the members of the  Class.

95.    Defendants had a duty to make full, fair accurate and timely disclosure in light of the representations made by Defendants concerning the Porsche Connect features. *See* infra at 37-38.

96.     Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts of the Porsche Connect after they knew of the obsolescence of 3G cellular networks. Defendants concealed and/or omitted material facts in order to reduce costs of manufacturing the Cars and increase their profits. As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

97.     The misrepresentations and omissions were material.

98.     Plaintiff and members of the Classes had a reasonable expectation that the Cars' Porsche connect features were not sold with obsolete components.

99.     Defendants knew their false misrepresentation, concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the planned obsolescence of 3G telematics would allow Defendants to continue to use cheaper telematics components and increase profits. Further, Defendants intended to induce Plaintiffs and members of the Classes into purchasing or leasing the Class Vehicles by promoting Porsche Connect as the latest technology and adaptable to change.

100.    Defendants acted with malice, oppression and fraud.

101.    Plaintiff's fraud claims accrued when Porsche itself announced that AT&T was sunsetting its 3G service and that such sunsetting would render the Porsche Connect inoperable. That announcement was made in or about December 2021.

102.    Plaintiff and members of the Classes reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions. As a direct and proximate result of Defendants' false representations, omissions and active concealment of

material facts regarding the Porsche Connect. Plaintiff and members of the Classes have suffered

actual damages in an amount to be determined at trial.

103.    Plaintiff and all purchasers  and lessees of the Cars (who, as detailed below are

the members of the putative Classes) have suffered injury  and been damaged by Defendants'

unconscionable practices and breaches of its warranties.  Specifically,  Plaintiff  and all members

of the putative Class paid for a Car that was represented and warranted by description as

including Porsche Connect which could "adapt" to changing technology, but the Cars they

received had 3G Only Limitations which eventually rendered the features inoperable.

Considering the prominence given to the Porsche Connect features which required an operable

telematics to be realized, and the indispensability of connectedness for safety, Plaintiff and class

members were deprived of the benefit of the bargain.

104.    Plaintiff and all members of the putative Classes received vehicles that were

substantially  less valuable than the vehicles that Defendants  represented and warranted to them,

due to the failure of Defendants  to deliver the Cars as described.

## <u>COUNT II</u>

### Negligent Misrepresentation
### (On Behalf Of The Class)

105.    Plaintiff incorporates and realleges each paragraph 1-92 as though fully set forth

herein.

106.    Plaintiff brings this count on behalf of himself and the members of the Class.

107.    Defendants owed a duty to disclose the 3G only telematics powering Porsche

Connect to Plaintiff and members of the Class because Defendants possessed superior and

exclusive knowledge regarding the defect and because of prior promotional statements made by

Porsche specifically about its Porsche Connect connectivity features.

108.    Defendants negligently misrepresented and omitted material facts regarding Porsche Connect. As a direct result of Defendants' negligent conduct, Plaintiffs and members of the Class have suffered actual damages.

109.    As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules or elsewhere, to Plaintiffs and members of the Classes the material fact that the Porsche Connect was powered by 3G only telematics, owners and lessees of the Class Vehicles are required to spend thousands of dollars to repair or replace the telematics, or sell their vehicles at a substantial loss.  Plaintiff and members of the Sub-Class had a reasonable expectation that the Cars' telematics was compatible with technology.

110.    Plaintiff's claims accrued when Porsche announced how AT&T's sunsetting would affect Porche Connect in or about December 2021.

111.    Plaintiff and members of the Class would not have purchased the Class Vehicles but for Defendants' negligent false representations and omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System defect, or would have paid less for the Class Vehicles.

112.    Plaintiffs and members of the Classes justifiably relied upon Defendants' negligent false representations and omissions of material facts. As a direct and proximate result of Defendants' negligent false representations and omissions of material facts. Plaintiffs and members of the Classes have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

113.    As a direct and proximate result of Defendants' breach of their express and implied duties, Plaintiff and members of the Class have been damaged in an amount to be proven

at trial, including, but not limited to, compensatory damages, incidental and consequential damages, and other damages allowed by law.

114.    Plaintiff and all purchasers and lessees of the Cars (who, as detailed below are the members of the putative Classes) have suffered injury and been damaged by Defendants' unconscionable practices and breaches of its warranties. Specifically, Plaintiff and all members of the putative Class paid for a Car that was represented and warranted by description as including Porsche Connect which could "adapt" to changing technology, but the Cars they received had 3G Only Limitations which eventually rendered the features inoperable. Considering the prominence given to the Porsche Connect features which required an operable telematics to be realized, and the indispensability of connectedness for safety, Plaintiff and class members were deprived of the benefit of the bargain.

115.    Plaintiff and all members of the putative Classes received vehicles that were substantially less valuable than the vehicles that Defendants represented and warranted to them, due to the failure of Defendants to deliver the Cars as described.

## COUNT III

### Breach Of Express And Implied Warranties Under Florida Law
### (Fla. Stat 672.313 and 680.12 )

116.    Plaintiff incorporates and realleges each paragraph 1-92 as though fully set forth herein.

117.    Plaintiff brings this count individually and on behalf of the other members of the Class.

118.    The warranties accompanying Cars were procedurally and substantively unconscionable under Uniform Commercial Code § 2-302 and other applicable state warranty

laws because  of the disparity  in bargaining power of the parties and the purchasers' lack of knowledge that Cars had 3G only limitations.

### A.    <u>The Express Warranty</u>

119.    Porsche advertises "The Porsche Warranty" and "The Porsche New Car Warranty" and an extended "Porsche Approved Warranty." Porsche also extends a "Porsche Parts Warranty" to every "Porsche Genuine Part fitted to your Porsche by a Porsche Center." Based on Porsche's own warranty literature the warranty appears  to be offered by Porsche AG.

120.    According to Porsche's Dealer And Sales Service Agreement and the "Standard Provisions" therein the warranties are expressly forwarded by Porsche NA and Porsche AG.

121.    The Porsche Approved Warranty, according to Porsche literature, "cover all components of your Porsche" for 12, 24 or 36 months and "all component repairs," and is transferable if the vehicle is sold privately. The list of excluded components <u>does</u> <u>not</u> include the telematics.

122.    New Porsches have a four year 50,000 mile factory warranty. The unused warranty is transferable to any new owners.

123.    Porsche authorized dealers refer to Porsche New Car Warranty as "bumper-to-bumper" which in the industry and the public is known as a comprehensive warranty covering vehicle items between the front and rear bumpers. Most certainly it is understood to cover a vehicles "electronics." Porsche Orlando refers to the warranty as "bumper-to-bumper."

124.    Telematic systems such as Porsche's which offers, *inter alia*, wireless vehicle safety communications are modules/units installed in the Cars which are subsystems of the Cars. Included in these devices are a multitude of "sensors." The same type of "sensors" that tell a vehicle owner when the vehicle's fluid levels are low or when the hood has not latched properly.

The latter type of sensors are routinely replaced under warranty as necessary when they become inoperable or unreliable.

      **B.**    **The Implied Warranties**

     125.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Fla. Stat.§§ 672.314 and 680.212.

     126.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under§ 672.103(1)(d).

     127.    Defendants are and were at all relevant times "lessors" of motor vehicles under Fla. Stat.§ 680.1031(1)(p).

     128.    All Class Members who purchased Class Vehicles in Florida are "buyers" within the meaning of Fla. Stat.§§ 672.103(1)(a).

     129.    All Class Members who leased Class Vehicles in Florida are "lessees" within the meaning of Fla. Stat.§ 680.1031(1)(n).

     130.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.103 l(l)(h).

     131.    Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by

Defendants, were safe and reliable and its telematics would be operable for the life of the vehicle.

132.    However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing connectivity because Porsche manufactured the vehicles using telematics components which Porsche knew had limited life, and lacked any retrofitting or adaptability features.

133.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-a-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the 3G Only Limitations. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and Class Members. Among other things, Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiff and other Class Members. Additionally, Defendants knew of the 3G Only Limitations at the time of sale.

134.    Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiff and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiff and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever-present risk of the Porsche Connect being rendered inadequate.

135.     Plaintiff and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice sent by Plaintiffs.

136.     Alternatively, Plaintiff and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiff's Complaint, Defendants have long known that the Class Vehicles contained the 3G Only Limitations but, however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiff and Class Members had no reason to believe that Defendants would have adequately repaired or replaced the Telematics if they presented their Class Vehicles to them for repair.

137.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff's and Class Members' Class Vehicles were and are defective, and has not been remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial.

138.     Plaintiff and all purchasers  and lessees of the Cars (who, as detailed below are the members of the putative Classes) have suffered injury  and been damaged by Defendants' unconscionable practices and breaches of its warranties.  Specifically,  Plaintiff  and all members of the putative Class paid for a Car that was represented and warranted by description as including Porsche Connect which could "adapt" to changing technology, but the Cars they received had 3G Only Limitations which eventually rendered the features inoperable. Considering the prominence given to the Porsche Connect features which required an operable

telematics to be realized, and the indispensability of connectedness for safety, Plaintiff and class members were deprived of the benefit of the bargain.

139.    Plaintiff and all members of the putative Classes received vehicles that were substantially less valuable than the vehicles that Defendants represented and warranted to them, due to the failure of Defendants to deliver the Cars as described.

140.    Plaintiff and all purchasers and lessees of the Cars (who, as detailed below are the members of the putative Classes) have suffered injury and been damaged by Defendants' unconscionable practices and breaches of its warranties. Specifically, Plaintiff and all members of the putative Class paid for a Car that was represented and warranted by description as including Porsche Connect which could "adapt" to changing technology, but the Cars they received had 3G Only Limitations which eventually rendered the features inoperable. Considering the prominence given to the Porsche Connect features which required an operable telematics to be realized, and the indispensability of connectedness for safety, Plaintiff and class members were deprived of the benefit of the bargain.

141.    Plaintiff and all members of the putative Classes received vehicles that were substantially less valuable than the vehicles that Defendants represented and warranted to them, due to the failure of Defendants to deliver the Cars as described.

## COUNT IV

### Violation Of The Florida Deceptive & Unfair Trade Practices Act
(Fla. Stat.§ 501.201, et seq.)

142.    Plaintiff realleges and incorporates by reference all paragraph 1-92 preceding allegations as though fully set forth herein.

143.    Plaintiff brings this count individually and on behalf of the other members of the Class.

144.    The Plaintiff and Class Members are "consumers" within the meaning of Fla. Stat. $ 501.203(7).

145.    Defendants were and are engaged in "trade or commerce" within the meaning of Fla. Stat. $ 501.203(8).

146.    The Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1)

147.    Defendants committed unfair or deceptive acts or practices, affirmative misrepresentations, material omissions and/or otherwise violated the FDUTPA. Defendants intentionally and knowingly misrepresented the Porsche Connect and the Cars and intentionally and knowingly failed to disclose and concealed the 3G Only telematics. Defendants' misrepresentations and omissions constitute unfair acts or practices in violation of the FDUTPA because they offend public policy, are immoral, unethical, oppressive, or unscrupulous and/or cause substantial injury to consumers.

148.    Defendants knew or should have known that the Cars were defective at the time of sale or lease. Given the latent nature of the defect, Defendants knew, or should have known, that the inoperability of the 3G Only Porsche Connect would occur outside of the coverage periods of the manufacturer's warranties.

149.    Defendants owed a duty to disclose the 3G Only Telematics to Plaintiff and members of the Class because they possessed superior and exclusive knowledge. Rather than disclose the defect, Defendants engaged in deceptive trade practices in order to sell additional Cars at higher profits and wrongfully transfer the cost of repair or replacement of the 3G Only telematics to Plaintiff and members of the Class.

150.     Defendants have knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein. Further, Defendants unconscionably marketed the Cars to uninformed consumers in order to maximize profits by selling additional Cars containing the undisclosed latent defect at higher profits.

151.     Defendants' unfair or deceptive acts or practices, affirmative misrepresentations and/or material omissions were likely to mislead a reasonable consumer and misled Plaintiff and members of the  Class. When Plaintiff and members of the -Class purchased or leased their Cars, they reasonably relied on the reasonable expectation that the telematics would last at least beyond the warranty periods without need for repair or replacement and would not pose an unavoidable safety risk. Had Defendants disclosed that the telematics were 3G only obsolete. Plaintiff and members of the Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles. Further, had Defendants disclosed the 3G only telematics would not last beyond the warranty periods without need for repair or replacement, Plaintiff and members of the Class would have demanded repair or replacement during the warranty periods at no cost—as provided for in Defendants' warranties.

152.     Defendants' unfair or deceptive acts or practices, affirmative misrepresentations and/or material omissions are substantially injurious to consumers. As a direct and proximate result of Defendants knowing, intentional concealment and omissions in violation of the FDUTPA, Plaintiff and members of the Class have suffered harm and/or continue to suffer harm, and/or actual damages in the amount of the cost to replace or replace the telematics, and damages to be determined at trial. Plaintiff and members of the Florida Sub-Class have also suffered the ascertainable loss of the diminished value of their vehicles.

153.     In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Florida UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the cars, as detailed above.

154.     Defendants had an ongoing duty to Plaintiff and Class Members to refrain from unfair or deceptive practices under the Florida UDTPA in the course of their business. Specifically, Defendants owed the Plaintiff and Class Members a duty to disclose all the material facts concerning the 3G Only limitations in the cars because, as detailed above: (a) Defendants had exclusive access to and far superior knowledge about facts and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members; (b) Given the 3G Only limitations hidden and technical nature, Plaintiff and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the defect on their own; (c) Defendants knew that the defect gave rise to safety concerns for the consumers who use the cars, and the defect would have been a material fact to the Class Members' decisions to buy or lease cars; and (d) Defendants made incomplete representations about the safety and reliability of the cars while purposefully withholding material facts about a defect. In uniform advertising and materials provided with each car, Porsche intentionally concealed, suppressed, and failed to disclose to the consumers that the cars contained the 3G Only limitations. Because they volunteered to provide information about the cars that they marketed and offered for sale and lease to consumers, Porsche had the duty to disclose the whole truth.

155.     As detailed above, the information concerning the 3G Only limitations was known to Defendants at the time of advertising and selling the cars, all of which was intended to induce consumers to purchase the cars.

156.    By misrepresenting the cars as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the 3G Only Limitations, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by Fla. Stat. § 501.204(1).

157.    Plaintiff's FUDTPA claims statute of limitations were tolled and/or such claims did not accrue until Porsche's disclosure of the affects on Porsche Connect of AT&T sunsetting of 3G in December 2021.

158.    Defendants intended for Plaintiff and Class Members to rely on them to provide adequately designed cars, and to honestly and accurately reveal the information described above.

159.    Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the car had adequate telematics. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiff and Class Members, about the true safety and reliability of cars, the quality of the cars, and the true value of the cars.

160.    Defendants' misrepresentations, omissions, and concealment of material facts regarding the 3G Only Limitations and true characteristics of the cars were material to the decisions of Plaintiff and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the cars were safe and reliable in deciding to purchase and lease cars.

161.    Plaintiff's and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the

Class Vehicles contained the 3G Only Limitations, as alleged above. Plaintiff and Class Members did not, and could not, unravel Defendants' deception on their own.

162.    Had they known the truth about the 3G Only Limitations, Plaintiff and Class Members would not have purchased or leased the cars, or would have paid significantly less for them.

163.    Plaintiff and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

164.    Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the 3G Only Limitations. Defendants' unlawful acts and practices complained of herein affect the public interest.

165.    Defendants were aware of the 3G Only Limitations when they marketed and sold the cars to Plaintiffs and Class Members.

166.    Pursuant to Fla. Stat. § 501 .2 1 1 , Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Florida UDTPA.

167.    Plaintiff and all purchasers  and lessees of the Cars (who, as detailed below are the members of the putative Classes) have suffered injury  and been damaged by Defendants' unconscionable practices and breaches of its warranties.  Specifically,  Plaintiff  and all members of the putative Class paid for a Car that was represented and warranted by description as including Porsche Connect which could "adapt" to changing technology, but the Cars they received had 3G Only Limitations which eventually rendered the features inoperable.

Considering the prominence given to the Porsche Connect features which required an operable telematics to be realized, and the indispensability of connectedness for safety, Plaintiff and class members were deprived of the benefit of the bargain.

168.     Plaintiff and all members of the putative Classes received vehicles that were substantially less valuable than the vehicles that Defendants represented and warranted to them, due to the failure of Defendants to deliver the Cars as described.

## COUNT V

### Unjust Enrichment

169.     Plaintiff incorporates the paragraphs 1-92 as if set forth fully in this count.

170.     The Defendants benefited financially from their breaches of warranty and misrepresentations as described in this complaint.

171.     The proposed class representative and class members sustained monetary damages as described in this complaint.

172.     Allowing the Defendants to retain their monetary enrichment from their wrongful and unlawful acts would be unjust and inequitable.

173.     The proposed class representative and class members request that the Defendants disgorge their profits from their wrongful and unlawful conduct and that the Court establish a constructive trust funded by the benefits conferred upon the Defendants as a result of their wrongful conduct. The proposed class representative and class members should be designated beneficiaries of the trust and obtain restitution for their out-of-pocket expenses caused by the Defendants' conduct.

174.     Wherefore, the proposed class representative and class members demand judgment against Defendants for multiple damages, interest, costs and attorneys' fees.

175.   Plaintiff and all purchasers  and lessees of the Cars (who, as detailed below are the members of the putative Classes) have suffered injury  and been damaged by Defendants' unconscionable practices and breaches of its warranties.  Specifically,  Plaintiff  and all members of the putative Class paid for a Car that was represented and warranted by description as including Porsche Connect which could "adapt" to changing technology, but the Cars they received had 3G Only Limitations which eventually rendered the features inoperable. Considering the prominence given to the Porsche Connect features which required an operable telematics to be realized, and the indispensability of connectedness for safety, Plaintiff and class members were deprived of the benefit of the bargain.

176.   Plaintiff and all members of the putative Classes received vehicles that were substantially  less valuable than the vehicles that Defendants  represented and warranted to them, due to the failure of Defendants  to deliver the Cars as described.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays for relief in the form of an order as follows:

a.      Certifying this action as a class action under Federal Rule of Civil Procedure 23, and appointing Plaintiff as class representative and his attorneys as class counsel;

b.      Awarding actual damages to Plaintiff and the Members of the Class;

c.      Awarding attorneys' fees, expenses, and the costs of this suit, together with prejudgment and post-judgment interest at the maximum rate allowed by law; and

d.      Awarding such other and further relief which the Court finds just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims  so triable.

Dated: October 11, 2024

SQUITIERI & FEARON, LLP

By:*/s/Lee Squitieri*
Lee Squitieri
305 Broadway
7th Floor
New York, New York 10007
(212) 421-6492

Attorneys for Plaintiff